### Emil S. Krause, Defendant in Error, v. Royal Metal Mfg. Co., Plaintiff in Error.

### Gen. No. 15,601.

CONTRACTS—*what not enforced.* An alleged contract which is indefinite and lacking in mutuality, will not be enforced.

Error to the Municipal Court of Chicago; the Hon. MCKENZIE CLELAND, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and judgment here. Opinion filed June 16, 1911.

WHITMAN & HORNER, for plaintiff in error.

GEORGE REMUS and ERNEST G. KUSSWURM, for defendant in error.

MR. JUSTICE BALDWIN delivered the opinion of the court.

On the 25th of February, 1909, Krause brought an action of the fourth class in the Municipal Court of Chicago to recover, as stated in his claim, "for money due the plaintiff from the defendant for that, whereas the defendant promised the plaintiff, to wit, on or about December, 1905, and on or about March, 1906, that the said corporation would pay the plaintiff a bonus of $600, if the profits justified it, but to pay the plaintiff $400 in any event." A jury was waived, and the cause tried by the court, resulting in a finding and judgment in favor of Krause for $400, which we are here asked to review, upon a writ of error.

It appears that plaintiff entered the employ of one Salomon in 1901, and continued in his employ and that of the company, at from $16 to $22 per week, until June, 1906; that

Salomon and his associates incorporated the defendant company in the latter part of 1905, and Mr. Salomon became its president. Krause claims to have told Salomon sometime in December, 1905, that he had another position offered him, and would have to leave unless defendant did right by him; that thereupon Salomon told him not to leave, as he was going to incorporate and would give him some stock. Krause further claims that sometime about New Year's, 1906, he asked Salomon about the stock, and the latter promised to sell him some on the installment plan. It appears that on Christmas, 1905, Salomon gave Krause $200, which he says was a Christmas present, but Krause claims that Salomon told him he would get more next year,—not less than $400, and, if the business allows, $600 or more. Krause claims that about March, 1906, he again asked Salomon about the stock, and was told, "We have decided not to give you any stock. We shall give you $400, and if the business profits well, we will give you $600 or more, at the end of the year." That, relying upon such promises, he stayed and continued to work until June 22, 1906, when he says he was discharged by Salomon.

These several conversations and promises are specifically denied by Salomon, who says that the only foundation for them all is the fact that he gave to Krause $200 as a Christmas present, and for no other purpose; and he testifies that he made such Christmas presents, though of different amounts, to other employees.

As to the claim that he was discharged, Krause's own testimony is that, when he objected to taking orders from another, a Mr. Traverse, who was manager and secretary of the company, told him that if he did not like it, he could get out. Whereupon Mr. Krause said, "All right," and he was then told that he could come down to the office and get his pay. He says that he went down to the office, and Toldte, the bookkeeper, made out his pay for the entire week, though he had only worked four days; that he had no conversation with Toldte about any more money due him. On the other hand, Toldte testifies that he remembered the occasion, and

that he asked Krause whether the amount he was paying him covered everything he had coming, to which Krause replied, "yes;" that the payment in addition to Krause's actually earned salary covered some work which his wife had done.

It appears that neither Traverse, the manager and secretary of the company, nor Toldte, the bookkeeper, knew anything about the $200 paid to Krause on the day before Christmas.

It seems to be contended here that the consideration for the alleged promise to pay the $400 or $600 sued for was that Krause should remain with the defendant company, and impliedly "not accept the other position offered to him." But it is not even contended that Krause bound himself, by any agreement, to stay any particular length of time.

It is also to be noted that plaintiff was not discharged, but voluntarily quit the employment of the defendant company, because he was displeased at having orders given to him by one who had theretofore been a subordinate. It is also a matter of comment that when he was paid off by the bookkeeper, according to his own testimony, he made no claim for any additional amount, nor did he, upon the trial, deny the testimony of the bookkeeper that he had admitted that nothing more was coming to him.

We do not think the conversations testified to afford a just basis for this judgment. The alleged contract is entirely too indefinite, and is lacking in mutuality. Even if there had been a contract, it was evidently abandoned by Krause, when he quit the employ of the defendant company. In any event, there is no sufficient testimony connecting the defendant corporation with the alleged promise, which Krause claims Salomon made to him before it was organized, but which Salomon expressly denies.

We have examined the entire record and briefs, and it seems clear to us that the alleged claim of defendant in error cannot be sustained, and that, upon the evidence, the court below should have found for the defendant. The judgment will, therefore, be reversed, and judgment entered here in favor of the plaintiff in error upon a finding of fact.

*Reversed and judgment here.*